UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES,

-v-

ELADIO PADILLA,

Defendant.

---

16 Cr. 317-04 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion by defendant Eladio Padilla for compassionate release from Federal Correctional Institution Berlin ("FCI Berlin"), pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies Padilla's motion.

I.  **Background**[1]

A.  **Padilla's Crimes, Prosecution, and Sentencing**

The prosecution of Padilla arose from an investigation into gang activity at the Diego Beekman Houses ("Beekman Houses"), a private housing complex spanning six city blocks in the Bronx. Padilla was a member of the Low Rider Brims, one of the gangs that controlled drug dealing at the Beekman Houses, and which was also responsible for robberies, assaults, and shootings. Padilla was a street level dealer who sold crack and marijuana. He also possessed firearms, including in connection with the Low Rider Brims' dispute with other gangs. On one occasion, on March 20, 2013, Padilla and a fellow member of the Low Rider Brims traveled to

---

[1] The Court draws the background to this decision largely from the presentence report, Dkt. 349 ("PSR"), the transcript of Padilla's sentencing on April 28, 2017, Dkt. 426 ("Sent. Tr."), Padilla's *pro se* application for compassionate release, Dkt. 749 ("Pro Se Mem."), the initial letter submission by Padilla's court-appointed counsel in support of that application, Dkt. 775 ("Counseled Mem."), the second letter submission by such counsel, Dkt. 780 ("Second Counseled Mem."), and the Government's opposition, Dkt. 781 ("Gov't Mem.").

shoot at a rival gang member; they were arrested en route, in possession of a loaded 9-millimeter semi-automatic firearm. Padilla was bailed on that charge. Two months later, on May 20, 2013, Padilla, after a verbal dispute with a rival gang member, arranged for fellow gang members to shoot at the rival. They did so, unloading multiple rounds at the rival, while individuals on the street scurried for safety. No one was hit.

On May 11, 2016, the Indictment charging numerous members of the Low Rider Brims was unsealed, and Padilla was arrested. He was charged in Count One with conspiracy to distribute and possess with intent to distribute 280 grams and more of cocaine base, and in Count Two with use of a firearm in relation to the narcotics conspiracy.

On January 13, 2017, Padilla pled guilty to each count, in each instance to a lesser-included offense. The parties stipulated, and the presentence report determined, that (1) on Count One, Padilla's adjusted offense level was 23, and that his criminal history category was III, yielding a guideline range of 57–71 months' imprisonment; (2) on Count Two, there was a mandatory minimum sentence of 84 months' imprisonment that was required to run consecutive to the sentence on Count One; and (3) Padilla's applicable guideline range therefore was 141–155 months' imprisonment.

Sentencing was held April 28, 2017, before the Hon. Katherine B. Forrest. She adopted the PSR's guideline calculation, and sentenced Padilla to an aggregate sentence of 132 months in prison, *i.e.*, nine months below the bottom of the Guidelines range. In evaluating the 18 U.S.C. § 3553(a) factors, Judge Forrest emphasized Padilla's having dealt a particularly destructive drug, crack, in conjunction with a gang, and in a vulnerable community. Sent. Tr. 31–32. She also noted that Padilla had used and brandished a gun to protect the gang's drug turf. *Id.* at 35–36. She also acknowledged that Padilla had "very sympathetic" personal circumstances,

2

reflecting the cycle of violence and prison in which he had been raised, and his family and community support. *Id.* at 38–39. In imposing a below-Guidelines sentence, she emphasized that the overall sentence would have been the same even had no mandatory minimum applied. She stated:

> This is not a guideline sentence. If the law changes later on and the law changes either to eliminate mandatory minimums for the gun or to change the amount of a sentence because of drugs, I'm not changing your sentence. I believe this is the appropriate sentence for you for these crimes.
>
> So if there are, later on, retroactive changes to the law, I will look at this transcript, because right now I believe that the sentence of 132 months is, in totality, for Counts One and Two, the right sentence, irrespective of mandatory minimums and irrespective of the guidelines.

*Id.* at 42.

On September 13, 2018, supervision over this case—spanning all defendants charged in 16 Cr. 317—was transferred to this Court, following Judge Forrest's retirement.

Padilla has been incarcerated since his arrest. He has served approximately seven years and nine months of his sentence. According to the Government, he has been sanctioned seven times in prison for disciplinary offenses. Gov't Mem. at 4. Assuming good behavior during the balance of his imprisonment, Padilla's scheduled release date is November 7, 2026. *Id.* at 4–5.

### B. Padilla's Compassionate Release Motion

On June 27, 2023, Padilla's *pro se* motion for compassionate release was filed on the docket. He argued that because his prior state-court marijuana convictions had been expunged, his criminal history points should be reduced to zero, lowering his guideline range. Pro Se Mem. at 1. Padilla also requested the appointment of counsel, which the Court granted. Dkt. 753.

On October 10, 2023, Padilla's counsel filed a supplemental submission, which requested release, or a reduction of sentence, based on the expungement of Padilla's marijuana convictions,

3

and the fact that Padilla had served three years in prison during the COVID-19 pandemic. Counseled Mem. at 7–12. On November 1, 2023, counsel submitted a second letter. It argued that new commentary to the Sentencing Guidelines, explaining amendments to the Guidelines' criminal history provisions, supported the application for a sentence reduction. Second Counseled Mem. at 1–2.

On November 1, 2023, the Government submitted an opposition.

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).[2] The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018,

---

[2] The Government does not dispute that Padilla has exhausted his administrative remedies. Gov't Mem. at 5 & n.2.

4

Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants"; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

5

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- ***The medical circumstances of the defendant.*** In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* §§ 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

- ***The age of the defendant.*** Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- ***Family circumstances of the defendant.*** Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

6

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury, "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]").

- *Changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between

7

the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B. Discussion**

Padilla moves for compassionate release predominantly on two grounds: that (1) his state marijuana convictions, which were responsible for two of his four criminal history points at sentencing, have since been expunged, pursuant to a 2019 change in New York State law; and (2) conditions of confinement during the COVID-19 pandemic were harsher and more restrictive than had been anticipated at his 2017 sentencing. Pro Se Mem. at 1–2; Counseled Mem. at 7–10.

Padilla's arguments do not permit a reduction of sentence under § 3582(c) under any circumstance enumerated in the Sentencing Commission's recent guidance. In brief:

Padilla does not claim unusual medical circumstances or vulnerability to deteriorating health in prison. U.S.S.G. § 1B1.13(b)(1). Padilla's general account of harsh prison conditions during the pandemic does not distinguish him from other inmates, let alone demonstrate that he is at greater risk of severe complications upon exposure to COVID-19 and that this risk "cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D); *see also United States v. Rodriguez*, No. 12 Cr. 790 (PAE), 2024 WL 244379, at *4 (S.D.N.Y. Jan. 23, 2024) (denying release motion based on continuing COVID-19 risk, and noting that "vaccines have been available to federal inmates for more than two and a half years," and that "the spike of deaths

8

and adverse outcomes among such inmates from COVID-19 in 2020 and 2021 is a thing of the past").

Padilla's age (35) is unremarkable. And he does not claim to be experiencing physical or mental health deterioration as a result of the aging process. *Id.* § 1B1.13(b)(2).

Padilla, although enjoying strong family support, does not claim to be the only caregiver for an immediate family member. *Id.* § 1B1.13(b)(3).

Padilla does not claim to have been the victim of abuse in custody. *Id.* § 1B1.13(b)(4).

Padilla does not satisfy the change-in-law provision. *Id.* § 1B1.13(b)(6). That is so for two reasons. First, he is ineligible for this provision due to the fact that he has not served at least 10 years of his sentence. Second, the relevant changes in law would not produce a gross disparity between the sentence Padilla received and the one that likely would be imposed today. There are two such changes in law that the Court considers as relevant to this analysis: first, the New York law that brought about the expungement of Padilla's marijuana convictions; second, certain retroactive provisions of the recent Amendment 821 to the federal Sentencing Guidelines.

At sentencing, the parties stipulated that Padilla's criminal history category was III, based on his having four criminal history points. Two derived from two adult marijuana convictions, *see* PSR ¶¶ 59, 61; the other two (known as "status points") resulted from his having committed the instant offenses while subject to a conditional discharge from the second marijuana conviction, *see* PSR ¶ 64 (citing U.S.S.G. § 4A1.1(d)).[3] The first change in law—the New York

---

[3] The PSR reflected an additional state crime for which Padilla had been sentenced: attempted criminal possession of a weapon in the second degree. PSR ¶ 62. On March 7, 2016, Padilla pled guilty to that offense; and on April 16, 2016, he was sentenced to one year imprisonment. *Id.* The PSR did not assign any criminal history points to this offense, treating it as relevant conduct to the offenses of conviction. *Id.* Judge Forrest, at sentencing, also treated this offense as relevant conduct. *See* Sent. Tr. 7. She stated that she had taken Padilla's time served in state

law expunging his convictions—would remove the first two criminal history points. That change would leave Padilla in criminal history category II, with a guideline range (135–147 months) above the sentence imposed. The second change in law—the recent Amendment 821—would remove Padilla's remaining two criminal history points (*i.e.*, the status points).[4] *See* U.S.S.G. § 4A1.1(e) (altering the calculation of "status points" for criminal history calculations). Giving Padilla the benefit of both changes in law, he would have zero criminal history points and be in criminal history category I. Such would yield a sentencing range of 46–57 months (down from 57–71 months) for Count One, and 130–141 months (down from 141–155 months) overall.

Given that Padilla received a 132-month sentence, and consistent with Amendment 821 could at best receive a two-month reduction upon resentencing, the Court cannot find a "gross disparity between the sentence being served and the sentence" the Court would have imposed in light of the new law. *Id.* § 1B1.13(b)(6); *cf., e.g.*, *United States v. Ballard*, 552 F. Supp. 3d 461, 468–69 (S.D.N.Y. 2021) (finding "gross disparity" between sentences of 601 months and 301 months); *United States v. Redd*, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020) (finding "gross disparity" between sentences of 540 months and 180 months). As such, the change-in-law provision, although furnishing Padilla his strongest claim to have established extraordinary and compelling circumstances meriting a sentence reduction, does not supply a basis for relief.[5]

---

custody into account in fashioning his sentence, and declined to order that prison authorities give Padilla time-served credit for that time. *See id.* at 44.

[4] Amendment 821 also reduces the offense level for a defendant who, subject to other conditions, had zero criminal history points at the time of sentencing. *See* U.S.S.G. § 4C1.1. Padilla is ineligible for this reduction, at a minimum, because his offense entailed the possession of a firearm. PSR ¶¶ 33–34; *see* U.S.S.G. § 4C1.1(a)(7).

[5] For avoidance of doubt—and to empower able defense counsel in the event an appellate challenge is contemplated to the finding above of a lack of legal authority—the Court, had it had authority under the change in law provision to reduce Padilla's sentence, would have reduced his

10

Nor, finally, can the Court find extraordinary and compelling circumstances under the catchall provision of U.S.S.G. § 1B1.13(b)(5). It permits such a finding where "[t]he defendant presents any other circumstance or [a] combination of circumstances . . . similar in gravity" to the circumstances elsewhere enumerated by the Commission. The factors cited by Padilla fall well short of satisfying the apposite provisions: the expungements do not satisfy the change-in-law provision, U.S.S.G. § 1B1.13(b)(6), and Padilla's experience in prison during the pandemic does not satisfy the medical and physical provision, U.S.S.G. § 1B1.13(b)(1). As such, the Court cannot find the factors cited by Padilla, in combination, "similar in gravity" to circumstances that are extraordinary and compelling.

In finding a lack of authority to reduce Padilla's sentence, the Court considered, *sua sponte,* whether Padilla could receive relief under 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows a reduction "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," but only if the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also Concepcion v. United States*, 597 U.S. 481, 495 (2022) (this provision "expressly cabin[s] district courts' discretion" to reduce a defendant's sentence). As relevant here, Section 1B1.10 of the Sentencing Guidelines—which governs § 3582(c)(2)—provides as follows:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment . . . is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) *had been in effect at the time the defendant was*

---

sentence to the bottom of the 130-141 month range yielded by giving Padilla the benefit of both changes in law, *i.e.*, a two-month reduction. The Court would have found a 130-month sentence compatible with the § 3553(a) factors as a whole, particularly given the fact, unanticipated by Judge Forrest, that Padilla's prison custody would include an extended period in hard and restrictive conditions caused by the COVID-19 pandemic.

11

*sentenced.* In making such determination, *the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.*

U.S.S.G. § 1B1.10(b)(1) (emphasis added). A reduction is only permissible, per the Sentencing Guidelines, if "the guideline range applicable to [a] defendant has subsequently been lowered *as a result of a[] [retroactive] amendment to the Guidelines Manual.*" *Id.* § 1B1.10(a)(1) (emphasis added). The Guidelines thus do not contemplate or authorize "plenary resentencing proceedings." *Dillon v. United States*, 560 U.S. 817, 827 (2010). Here, Padilla's guideline range has not "been lowered as a result of a[] [retroactive] amendment to the Guidelines Manual," U.S.S.G. § 1B1.10(a)(1), but as a result of New York's decision to expunge Padilla's convictions for certain offenses. Except to the extent authorized by Amendment 821, he is therefore ineligible to benefit from the resentencing procedures provided for in § 3582(c)(2).

## CONCLUSION

For the reasons above, the Court denies Padilla's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is respectfully directed to terminate the motion pending at Docket 775.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 23, 2024
New York, New York